# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

PAMELA WALKER,

     Plaintiff,

     v.                            No. 5:19-CV-47

WAL-MART STORES EAST, LP; and
JOHN DOES NOS. 1–10,

     Defendants.

## ORDER

Before the Court is the Motion for Summary Judgment (the "Motion"), filed by Defendant Wal-Mart Stores East, LP ("Defendant"). Dkt. No. 67. For the reasons stated below, Defendant's Motion is **DENIED**.

## BACKGROUND

This case arises out of personal injuries sustained by Plaintiff Pamela Walker ("Plaintiff") after she slipped and fell at a Walmart store in Douglas, Georgia. Dkt. No. 1-1 ¶¶ 5-6. In the late afternoon of December 14, 2016, Plaintiff and her husband went to the local Walmart store to purchase groceries. Dkt. No. 67-3 at 33. It had rained that morning, but the rain stopped at some point prior to Plaintiff's arrival. Id. at 34-35. The in-

store surveillance footage[1] demonstrates that Plaintiff entered the store at approximately 6:10:33 p.m. and walked through the vestibule into the main entryway of the store (the "Entryway"). Dkt. No. 67-4. Upon entering the Entryway, Plaintiff immediately proceeded to her left to retrieve a shopping cart from the cart alley. After grabbing a cart, Plaintiff turned back toward the Entryway, pushing the cart in front of her. Id. at 6:10:42. Plaintiff took four to five steps and transitioned from a floormat in the cart alley to the Entryway's tile floor. As soon as she stepped onto the tile floor, Plaintiff slipped and fell. Id. at 6:10:47.

Approximately forty minutes prior to the fall, an unidentified Walmart associate can be seen mopping the Entryway, including the area where Plaintiff fell. Id. at 5:29:40. At the time of Plaintiff's fall, a wet floor sign was present in the Entryway across from the cart alley to warn customers of potential rainy-day conditions. Id. at 6:10:47. A fan also sat inside the cart alley to speed the drying of the shopping carts; paper towels were available for customers to dry off their carts; and floormats had been placed within the vestibule and in front of the cart alley. Dkt. No. 67-5 ¶ 5.

---

[1] Plaintiff's fall, and the events before and after her fall, were recorded by an in-store surveillance camera, the footage of which is part of the record. See Dkt. No. 67-4.

Walmart Associate Jessica Harrelson ("Ms. Harrelson") was working as a customer host on the day of Plaintiff's fall. Id. ¶ 2. Ms. Harrelson submitted an affidavit stating that two additional wet floor signs were present that day which are not visible in the surveillance video: one in the vestibule and one in the main entrance to the store. Id. ¶ 5. Ms. Harrelson also stated that she "verbally cautioned Plaintiff to be careful, and that there was a possibility the floor could be wet from the rainwater." Id. ¶ 6.

Plaintiff testified that she did not see any wet floor sign prior to her fall. Dkt. No. 67-3 at 43. It was not until after her fall that Plaintiff turned to her right and identified the wet floor sign on the other side of the Entryway. Id. Plaintiff stated that her clothes were "soaked" and "drenched in water" after she fell. Id. at 38, 41-42. Plaintiff also testified that she saw "a clear substance on the floor" remaining after she fell; she characterized it as a puddle on the floor but did not know where the puddle came from or how big it was. Id. at 42.

As a result of her fall, Plaintiff contends she suffered injuries to her neck, lower back, right hand, right elbow, right hip, right knee, and left ankle. Id. at 48, 53. Plaintiff submitted that she suffers from continuing pain in her legs, left foot, shoulders, and mid-back that are also related to this incident. Id. at 48. On April 4, 2019, Plaintiff underwent a C6 and C7

3

anterior cervical discectomy fusion ("ACDF") to relieve pain in her neck. Id. at 58-59. Plaintiff argues that this surgery was necessary because of her fall. Dkt. No. 76 at 3.

On July 25, 2018, Plaintiff filed this action against Defendants Wal-Mart Stores East, LP and John Does Nos. 1-10[2] in the State Court of Coffee County, Georgia, claiming that Defendant Wal-Mart breached its duty to keep the premises safe for invitees. Dkt. No. 1-1 at 4, 7. Plaintiff also alleges respondeat superior and negligent hiring and retention claims against Defendant. Id. ¶ 12. On June 7, 2019,[3] Defendant removed the action to this Court on the basis of diversity jurisdiction. Dkt. No. 1. On November 20, 2020, Defendant moved for summary judgment on all of Plaintiff's claims. Dkt. No. 67 at 1. Alternatively, in the event the Court were to deny summary judgment, Defendant moves for partial summary judgment on Plaintiff's request for special damages. Dkt. No. 67-1 at 17. Specifically, Defendant argues Plaintiff has failed to submit any evidence to demonstrate that

---

[2] Plaintiff named John Does 1-10 as Defendants but has asserted no specific claim against them. Dkt. No. 1-1 ¶ 2. Fictitious-party pleading is generally not permitted in federal court. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Even if it were, there would be no reason to maintain this action against these Doe Defendants. By failing to assert anything more than conclusory allegations against the Doe Defendants in her Complaint, see dkt. no. 1-1 ¶ 2, and by failing to support any claim against them in her response to Defendant's motion for summary judgment, Plaintiff provides no ground on which she can maintain a suit against these unnamed Defendants. These Doe Defendants must therefore be excused.

[3] Defendant explains in its notice of removal that it received notice of Plaintiff's damages exceeding $75,000 for the first time on June 3, 2019, such that removal on June 7, 2019 was timely. Dkt. No. 1 ¶ 9.

her ACDF surgery was causally related to the incident at issue. Id. As such, Defendant insists that Plaintiff's request for special damages fails as a matter of law. Id.

On December 30, 2020, Plaintiff filed a response in opposition, dkt. no. 76, and on January 15, 2021, the Court held a hearing on the Motion, dkt. no. 86. At the hearing, Plaintiff conceded her claims of respondeat superior and negligent hiring and retention. Accordingly, all that remains is Plaintiff's premises liability claim.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248). Factual disputes that are "irrelevant or unnecessary" are not sufficient to survive summary judgment. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp.

5

v. Catrett, 477 U.S. 317, 323 (1986). The movant must show the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

## I.   Premises Liability

Under Georgia law, to recover on a premises liability claim, a plaintiff must show: "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." Robinson v. Kroger Co., 493 S.E.2d 403, 414 (Ga. 1997). At the summary judgment stage, the plaintiff has the burden of producing evidence that the defendant had actual or constructive knowledge of the hazard. Am. Multi-Cinema, Inc. v. Brown, 679 S.E.2d 25, 28 (Ga. 2009) (citing Robinson, 493 S.E.2d at 413–14). As to the second prong, "the plaintiff's evidentiary proof . . . is not shouldered until the defendant establishes negligence on the part of the plaintiff." Walmart Stores E. L.P. v. Benson, 806 S.E.2d 25, 28 (Ga. Ct. App. 2017). If the defendant succeeds in establishing the plaintiff's negligence, the burden shifts back to the plaintiff to produce evidence creating a genuine dispute of fact as to her negligence or tending to show that her negligence was due to acts or conditions within the defendant's control. Am. Multi-Cinema, Inc., 679 S.E.2d at 28 (citing Robinson, 493 S.E.2d at 414).

Defendant argues that it is entitled to summary judgment because Plaintiff has not created a genuine issue of material fact

as to whether: (1) a hazardous condition existed on the floor; (2) Defendant failed to exercise ordinary care to keep the premises safe; and (3) Defendant had any superior knowledge of such a hazard. Dkt. No. 67-1 at 2.

### A.   Hazardous Condition

"Whether a hazardous condition exists is the threshold question in a slip and fall case." Season All Flower Shop, Inc. v. Rorie, 746 S.E.2d 634, 638 (Ga. Ct. App. 2013). That is because "[w]here the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and there can be no recovery because an essential element of negligence cannot be proven." Glynn-Brunswick Mem'l Hosp. Auth. v. Benton, 693 S.E.2d 566, 568 (Ga. Ct. App. 2010). It is well established that "[p]roof of a fall, without more, does not create liability on the part of a proprietor or landowner, because it is common knowledge that people fall on the best of sidewalks and floors." Taylor v. Thunderbird Lanes, LLC, 748 S.E.2d 308, 311 (Ga. Ct. App. 2013). As such, "the plaintiff must produce evidence of what foreign substance, condition, or hazard caused her to slip and fall." Id.

Moreover, a store proprietor "is not an insurer of its invitees' safety." Walker v. Sears Roebuck & Co., 629 S.E.2d 561, 564 (Ga. Ct. App. 2006). "'The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's

superior knowledge of a condition that may expose the invitees to an *unreasonable risk* of harm.'" Sunlink Health Sys., Inc. v. Pettigrew, 649 S.E.2d 532, 534 (Ga. Ct. App. 2007) (quoting Emory Univ. v. Smith, 581 S.E.2d 405, 406 (Ga. Ct. App. 2003)).

Georgia courts have made it clear that rainwater is not considered a hazard or dangerous condition absent any unreasonable accumulation. Pandya v. Marriott Hotel Servs., Inc., No. 1:19-CV-2743-TCB, 2021 WL 3464263, at *8 (N.D. Ga. Aug. 5, 2021) (citing Gibson v. Consol. Credit Corp., 138 S.E.2d 77, 82 (Ga. Ct. App. 1964)). This is because "[t]he risk of harm imposed by some accumulation of water on the floor of business premises during rainy days is not unusual or unreasonable in itself, but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate." Walker, 629 S.E.2d at 564. "It is a matter of common knowledge that some water would normally be present at a place where shoppers continually pass in and out during rainy weather." Gibson, 138 S.E.2d at 82. As such, in rainy day slip-and-fall cases, plaintiffs "are charged with equal knowledge that water is apt to be found in any area frequented by people coming in from the rain outside." Hayward v. Kroger Co., 733 S.E.2d 7, 12 (Ga. Ct. App. 2012).

Here, Plaintiff fell in the Entryway of the store. Of course, water was apt to be found in that area due to customers' continual passing in and out during the rainy weather earlier that day. Thus,

a hazardous condition did not exist "unless there [was] an unusual accumulation of water." Walker, 629 S.E.2d at 564.

Defendant argues Plaintiff has failed to establish an unusual accumulation of water because Plaintiff could not give any specific details about the amount of water on which she slipped. Dkt. No. 67-1 at 12-13. Contrary to Defendant's argument, though, Plaintiff sufficiently described the amount of water that existed on the floor. She testified that she saw "a puddle" of water present on the floor after she fell and that her clothes were "soaked" and "drenched in water." Dkt. No. 67-3 at 42. Thus, a reasonable inference could be drawn that enough water existed such that a puddle remained on the floor even after water permeated Plaintiff's clothes in a manner that caused them to be "soaked" and "drenched." Such evidence is sufficient for a reasonable juror to conclude a hazardous condition existed on the floor despite Plaintiff's general knowledge of rainwater. Cf. Womack-Sang v. Publix Super Markets, Inc., 556 F. App'x 912, 915 (11th Cir. 2014) (affirming summary judgment where plaintiff "was unable to describe the amount of water remaining on the floor after she stood up"); Pandya, 2021 WL 3464263, at *9 (granting summary judgment where plaintiff testified the lobby was "slippery" but could not say "whether there was any pool of water"); Rorie, 746 S.E.2d at 639 (affirming summary judgment where plaintiff "was unable to provide any description of the moisture" and, in fact, "decline[d] to state

10

there was a puddle of water on the floor"); <u>Walker</u>, 629 S.E.2d at 564 (affirming summary judgment where plaintiff noticed water on the floor after she fell but "could not testify, even generally, as to the amount of water that was on the floor").

Given Plaintiff's testimony, a jury question exists as to whether the puddle Plaintiff identified constituted an unusual accumulation of water on a rainy day. <u>See</u> <u>Daniels v. BI-LO, LLC</u>, No. 4:08-CV-0152-HLM, 2009 WL 10669604, at *5 (N.D. Ga. Mar. 19, 2009) ("[G]enuine disputes remain as to whether the puddle of water that caused Plaintiff's fall was an unreasonable accumulation of water or an unreasonable hazard."); <u>Edwards v. Ingles Mkt., Inc.</u>, 506 S.E.2d 205, 206 (Ga. Ct. App. 1998) (indicating that a puddle of rainwater may be a hazardous condition despite a plaintiff's general knowledge that the floor might be wet); <u>Smith v. Toys R Us, Inc.</u>, 504 S.E.2d 31, 34 (Ga. Ct. App. 1998) (holding plaintiff's testimony regarding a one-inch puddle of water that splashed as she stepped in it "would authorize a jury to find there was an unduly heavy accumulation of water").

**B.   Defendant's Actual or Constructive Knowledge**

An unusual accumulation of water alone is not enough to establish a slip and fall claim. Indeed, the true basis of liability in such cases is a defendant's superior knowledge of the hazardous condition. <u>Pandya</u>, 2021 WL 3464263, at *9. Therefore, Plaintiff must also demonstrate that Defendant had actual or

constructive knowledge of the alleged hazard. Robinson, 493 S.E.2d at 413–14.

### i.   Actual Knowledge

Plaintiff argues that "Defendant possessed actual knowledge of the hazard" at issue. Dkt. No. 76 at 5. In support of this contention, Plaintiff points to evidence that "Defendant's store employee Harrelson plainly states she knew of the wet and potentially hazardous conditions present on that day." Id. However, Harrelson stated only that "there was a *possibility* the floor could be wet from the rainwater." Id. ¶ 6 (emphasis added). This statement in no way demonstrates that Harrelson had actual knowledge of the alleged puddle in the specific spot where Plaintiff fell. Even drawing all inferences in favor of Plaintiff, Harrelson's statement, at most, demonstrates she possessed the "common knowledge that some water would normally be present at a place where shoppers continually pass in and out during rainy weather," Gibson, 138 S.E.2d at 82, which is insufficient to demonstrate actual knowledge. Defendant's actual knowledge of the *specific* hazard is determinative here; not its knowledge that the floor might be wet in a *general* sense on a rainy day. See Womack-Sang, 556 F. App'x at 914 ("[A]n invitee must prove . . . that the defendant had actual or constructive knowledge *of the hazard*." (emphasis added)); cf. Edwards, 506 S.E.2d at 206 (finding actual knowledge where another customer testified that "she informed

12

Ingles' manager *about the puddle* on the floor approximately 15 minutes prior to [plaintiff's] fall" (emphasis added)).

### ii.  Constructive Knowledge

However, Defendant's lack of actual knowledge is not dispositive. A premises liability claim may be established through Defendant's either actual or constructive knowledge. <u>Robinson</u>, 493 S.E.2d at 414. Thus, the Court must also consider whether Defendant had constructive knowledge of the unusual accumulation.

Under Georgia law, store proprietors have a duty to exercise reasonable care in inspecting and keeping the premises in safe condition. <u>Smith</u>, 504 S.E.2d at 33. Thus, a plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing "'evidence that the hazardous condition lasted so long that it would have been discovered and removed if the proprietor had exercised reasonable care in inspecting the premises.'" <u>River Place at Port Royal Condo. Ass'n, Inc. v. Sapp</u>, 856 S.E.2d 28, 33 (Ga. Ct. App. 2021) (quoting <u>All Am. Quality Foods, Inc. v. Smith</u>, 797 S.E.2d 259 (Ga. Ct. App. 2017)). However, to withstand a motion for summary judgment, "a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection procedures were in place and followed at the time of the incident." <u>J.H. Harvey Co. v. Reddick</u>, 522 S.E.2d 749, 753 (Ga. Ct. App. 1999). Accordingly, "store proprietors are not liable to patrons who slip and fall on

13

floors made wet by rain conditions unless there has been an unusual accumulation of water *and* the proprietor has failed to follow reasonable inspection and cleaning procedures." Pandya, 2021 WL 3464263, at *9.

What constitutes a reasonable frequency of inspection and cleaning procedures "will vary with the circumstances of each case." J.H. Harvey Co., 522 S.E.2d at 753. However, in cases where a proprietor has shown that an inspection occurred within a "brief period" prior to an invitee's fall, courts have held that the inspection procedure was adequate as a matter of law. See e.g., Chapman v. Wal-Mart Stores, Inc., No. 1:11-CV-03931-RWS, 2013 WL 607851, at *4 (N.D. Ga. Feb. 19, 2013) (granting summary judgment where it was undisputed that a store manager "inspected the floors at the front of the store, including the area where Plaintiff fell, just five minutes prior to Plaintiff's fall and found no water or other hazard"); Harris v. QuikTrip Corp., No. 1:16-CV-0324-CC, 2017 WL 3597507, at *7 (N.D. Ga. Aug. 14, 2017) (granting summary judgment where inspections were conducted every thirty minutes and the last inspection occurred a mere ten minutes prior to plaintiff's fall); Roberts v. Outback Steakhouse of Fla., Inc., 641 S.E.2d 253, 255 (Ga. Ct. App. 2007) (affirming summary judgment where restaurant manager testified that he inspected the entire restaurant every fifteen minutes and did not notice any unusual accumulation of water). Furthermore, "[i]t is not the duty of

14

persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas." Walker, 629 S.E.2d at 564.

Here, Defendant contends it took reasonable precautions to keep the premises safe. Dkt. No. 67-1 at 2. Defendant set forth that its policy is to dry mop the store entrance when wet weather is expected. Dkt. No. 67-6 at 14. Further, Harrelson testified that the "floors were being mopped periodically," but she does not identify with particularity how often the Entryway was inspected or mopped prior to Plaintiff's fall. Dkt. No. 67-5 ¶ 5. The evidence demonstrates that the last time the area where Plaintiff fell was mopped or inspected was approximately forty minutes prior to Plaintiff's fall. Dkt. No. 67-4 at 5:29:40.

The Court cannot conclude—as a matter of law—that Defendant's inspection and cleaning procedures were reasonable. Ordinarily, "findings concerning knowledge of a hazard are the province of the jury." Ali v. Wal-Mart Stores E., LP, No. 1:12-CV-2112-JEC, 2014 WL 359904, at *3 (N.D. Ga. Feb. 3, 2014). This means:

> issues such as how closely a particular retailer should monitor its premises and approaches, what retailers should know about the property's condition at any given time, how vigilant patrons must be for their own safety in various settings, and where customers should be held responsible for looking or not looking are all questions

that, in general, must be answered by juries as a matter
of fact rather than by judges as a matter of law.

Am. Multi-Cinema, Inc., 679 S.E.2d at 28. Simply put, issues
concerning knowledge of a hazard are "generally not susceptible to
summary adjudication, and . . . summary judgment is granted only
when the evidence is plain, palpable, and undisputed." Robinson,
493 S.E.2d at 414.

In Smith, the plaintiff slipped on water that had accumulated
in an open doorway of a store following a rainstorm on a windy
day. 504 S.E.2d at 33. The court denied summary judgment on the
basis that the defendants had not shown a lack of constructive
knowledge by evidence of compliance with reasonable inspection
and/or cleaning procedures. Id. at 34. Specifically, the court
stated it could not find the defendants' inspection procedures
were reasonable, as a matter of law, because the defendants had
not inspected the entrance area for approximately ninety minutes
before the plaintiff's fall. Id. at 34-35. Additionally, while the
defendants' witnesses had described the store's routine inspection
procedures, there was no evidence that those procedures had been
followed. Id. The court thus reasoned that a jury could find the
defendants had constructive or imputed knowledge of the hazardous
condition, which precluded summary judgment. Id.

Furthermore, in Davis v. Bruno's Supermarkets, Inc., the
trial court granted summary judgment and determined that a store's

16

inspection program was presumed to be adequate because the manager stated that it was performed "within a brief period" before the fall. 587 S.E.2d 279, 281 (Ga. Ct. App. 2003). The court of appeals reversed and concluded that the reasonableness of an inspection that occurred thirty to forty minutes prior to the plaintiff's fall was a question for the jury to determine. Id. at 281-82.

Following Smith and Davis, the Court cannot conclude as a matter of law that Defendant's inspection procedures were reasonable under the circumstances. See also Daniels, 2009 WL 10669604, at *5 (whether defendant failed to follow reasonable inspection procedures was a question for the jury where last inspection occurred approximately ninety minutes before Plaintiff fell); J.H. Harvey Co., 522 S.E.2d at 753 (reasonableness of store's inspection and cleaning procedures was a question for the jury where the floor had not been swept or inspected for one hour and forty-two minutes before plaintiff's fall). "'[W]hat constitutes a reasonable inspection procedure var[ies] with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location. . . . Thus, an inspection *may be required* more frequently than every 30 minutes.'" Davis, 587 S.E.2d at 281 (quoting Shepard v. Winn Dixie Stores, Inc., 527 S.E.2d 36, 39 (Ga. Ct. App. 1999)) (emphasis added). A rational juror could conclude that Defendant's inspection and cleaning

17

procedures were unreasonable where Defendant last mopped the floor forty minutes before Plaintiff's fall.

The Court acknowledges that other measures were in place to prevent water from accumulating in the Entryway. Such measures included at least one wet floor sign on the opposite side of the Entryway, fans inside the cart alley, paper towels for drying carts, and floormats placed in the cart alley and the vestibule. Dkt. No. 67-5 ¶ 5. However, whether these measures permitted Defendant to leave the incident area uninspected for the stated period of time is a question for the jury. The issue here is how closely Defendant should have monitored its premises and approaches. Such an issue is generally not susceptible to summary adjudication. Robinson, 493 S.E.2d at 414. Given that the evidence here is not "plain, palpable, and undisputed," a jury question exists as to whether Defendant's inspection and cleaning procedures were reasonable, and, consequently, whether Defendant had constructive knowledge of the hazard. Id.

### C. Plaintiff's Equal Knowledge

Finally, Defendant contends that Plaintiff had equal knowledge of the alleged hazardous condition and, thus, cannot recover.[4] Dkt. No. 67-1 at 12. Defendant submits that Plaintiff

---

[4] At the summary judgment stage, the burden is on the movant to "produce evidence that the plaintiff's injury was caused by his or her own voluntary negligence (intentional disregard of a known risk) or causal negligence (failure to exercise ordinary care for one's personal safety)." Am. Multi-Cinema, Inc., 679 S.E.2d at 28 (2009); see also Benson, 806 S.E.2d at 28 (as to the plaintiff's

was "well-aware that it had been raining," and, thus, "was in at least an equal position to observe whether there was water on the floor." Id. at 12, 15. However, "[e]qual knowledge of both parties as to weather conditions does not bar recovery." Edwards, 506 S.E.2d at 207. Instead, Defendant must demonstrate that Plaintiff had knowledge of the *specific hazard* which caused the fall. Id. Here, Plaintiff testified that she did not see the puddle prior to falling. Dkt. No. 67-3 at 44-45. Therefore, drawing all inferences in favor of Plaintiff, Defendant—but not Plaintiff—had knowledge of the puddle in which Plaintiff slipped prior to Plaintiff's fall.

Furthermore, Defendant has not demonstrated that Plaintiff should have known of the puddle through the exercise of ordinary care.[5] Defendant contends that Plaintiff "did not look at the floor" despite her being aware of the rainy conditions. However, "[Plaintiff] is not required, in all circumstances, to look continuously at the floor, without intermission, for defects. . . . What constitutes a reasonable lookout depends on all the circumstances at the time and place." Robinson, 493 S.E.2d at 409. Plaintiff testified that she did not notice anything on the floor in the Entryway as she was walking to the cart alley because she

lack of knowledge, "the plaintiff's evidentiary proof . . . is not shouldered until the defendant establishes negligence on the part of the plaintiff").

[5] "An invitee is charged with exercising ordinary care for personal safety and using ordinary care to avoid the effect of the owner/occupier's negligence after that negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee should have learned of it." Robinson, 493 S.E.2d 403 at 409.

was looking at the shopping carts. Dkt. No. 67-3 at 44-45. Given the evidence, whether Plaintiff failed to exercise ordinary care for her own safety is a question for the jury. See Edwards, 506 S.E.2d at 207 (testimony that "[plaintiff] was not looking directly at the floor at the time she fell because she was looking at the shopping carts does not alone show she was not exercising ordinary care" (alteration omitted)); see also Am. Multi-Cinema, Inc., 679 S.E.2d at 28 (whether customer should be held responsible for looking or not looking is a question that generally must be answered by a jury).

In sum, a jury question exists as to whether Defendant had constructive knowledge of a hazardous condition and whether Plaintiff lacked knowledge of that condition despite the use of ordinary care. Accordingly, Defendant's Motion for Summary Judgment, dkt. no. 67, must be **DENIED**.

## II. Special Damages

Because Defendant's Motion for Summary Judgment as to Plaintiff's premises liability claim is denied, the Court must now consider whether Defendant is alternatively entitled to partial summary judgment on Plaintiff's claim to damages. Defendant argues that it is entitled to partial summary judgment as to Plaintiff's special damages because she lacks the ability to prove that

category of damages.[6] Dkt. No. 67-1 at 19. Specifically, Defendant argues Plaintiff has failed to demonstrate that her fall at Walmart necessitated the April 4, 2021 ACDF surgery and, thus, cannot recover medical expenses for this surgery. Id.

As an initial matter, Defendant insists that medical expert testimony is essential to prove causation in a neck injury case such as this one. Id. at 18. The Court agrees that "medical causation opinions ordinarily . . . require the specialized knowledge of an expert witness." See In re Am. Airlines Flight 331, No. 10-20131-CV, 2013 WL 12340397, at *2 (S.D. Fla. Oct. 24, 2013). However, Plaintiff here has proffered Dr. Hewitt Sims ("Dr. Sims") as an expert to offer opinions related to her treatment and causation. Dkt. No. 49. As such, it appears that Defendant takes issue with the sufficiency of Dr. Sims's expert report rather than the lack of expert testimony altogether. See, e.g., Dkt. No. 67-1 at 5 ("[I]n his written report, Dr. Sims was unable to causally connect Plaintiff's surgery to the subject incident.").

Under Georgia law, medical causation testimony generally should not be based upon possibilities, but instead should be "based, at the least, on the determination that there was a reasonable probability that the negligence caused the injury."

---

[6] Although Defendant contends it is moving for summary judgment on damages, its argument focuses on causation. Specifically, Defendant argues Plaintiff has failed to submit any evidence to demonstrate that her ACDF surgery was causally related to the fall at issue. Dkt. No. 67-1 at 17.

Rodrigues v. Ga.-Pac. Corp., 661 S.E.2d 141, 143 (Ga. Ct. App.
2008). "Nevertheless, medical testimony stated only in terms of a
'possible' cause *may* be sufficient when supplemented by probative
non expert testimony on causation." Id. (citing Estate of Patterson
v. Fulton–DeKalb Hosp. Auth., 505 S.E.2d 232 (Ga. Ct. App. 1998)).
Thus, medical evidence showing only a possibility of causal
relation "in conjunction with other evidence, non-expert in
nature, indicating that such a relation exists . . . is sufficient
to establish a causal relation." Estate of Patterson, 505 S.E.2d
at 235.

     For example, in Rodrigues, the court reversed a grant of
summary judgment for a defendant even though plaintiff's medical
expert stated only that the defendant's actions were a "'possible'
cause of [plaintiff's] injuries, [because] other nonexpert
evidence was presented that supplemented that testimony." 661
S.E.2d at 144. Such supplementary evidence consisted of the
plaintiff's testimony that he had been in good health before
defendant's alleged tortious conduct and began suffering symptoms
immediately afterwards. Id.; see also Nat'l Dairy Prods. Corp. v.
Durham, 154 S.E.2d 752, 754 (Ga. Ct. App. 1967) (where plaintiff
claimed that a collision caused an inactive tumor to become active
and malignant, a combination of expert medical testimony that
established *possible* causation with nonexpert testimony that
"established the decedent's apparent good health prior to the

collision and the onset of cancer symptoms closely following the collision" was sufficient to withstand a summary judgment motion).

Here, Dr. Sims stated in his report that he could not draw "any firm conclusions to directly correlate the surgery . . . to the slip and fall occurring in Walmart." Dkt. No. 67-8 at 16. However, Dr. Sims also stated: "[c]ertainly, it is possible that the fall could have irritated the cervical spine" for which the surgery was performed. Id. Moreover, Plaintiff testified that in the fifteen years prior to the date of the incident, she did not seek any treatment for injuries to her neck. Dkt. No. 67-3 at 49-50. She also testified that her neck and back started bothering her "right after" her fall and "as time passed[,] it worsened." Id. at 51. Thus, similarly to the cases cited above, Plaintiff's testimony sufficiently supplements the expert testimony in this case to survive summary judgment. "[E]ven with [Defendant's] argument that Dr. [Sims] only raised the *possibility* that the surgery was necessitated by the accident, there is sufficient non-expert testimony in this case to warrant a denial of [Defendant's] motion for summary judgment." Bruce v. Classic Carrier, Inc., No. 1:11-CV-01472-JEC, 2014 WL 1230231, at *9 (N.D. Ga. Mar. 24, 2014); see also Rodrigues, 661 S.E.2d at 145 (at summary judgment, "[the court] must construe all evidence in favor of the nonmovant and need only determine whether *some* competent evidence supported

23

plaintiff's claim, not whether *all* evidence supported that claim").

Defendants may raise issues relating to Plaintiff's medical history and introduce alternative theories about the cause of Plaintiff's injuries and need for surgery, but those are matters for the trier of fact to weigh, not for this Court to decide as a matter of law. Bruce, 2014 WL 1230231, at *8; Wilson v. Taser Int'l, Inc., 303 F. App'x 708, 715 (11th Cir. 2008) ("As a general rule, issues of causation are for the jury to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases.") (citing Ogletree v. Navistar Int'l Transp. Corp., 535 S.E.2d 545, 548 (Ga. Ct. App. 2000)). Defendant's motion for partial summary judgment as to special damages must also be **DENIED**.

### CONCLUSION

For the above reasons, Defendant's Motion for Summary Judgment, dkt. no. 67, is **DENIED**. Defendant's alternative Motion for Partial Summary Judgment as to Plaintiff's special damages' claim is also **DENIED**.

**SO ORDERED**, this 2nd day of September, 2021.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA